**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HEATHER LUSTER )
)
Plaintiff, )
)
v. )
)   Civil Action No. 22-672
ROBIN REED, )   Judge Nora Barry Fischer
)
Defendant. )
)

**<u>MEMORANDUM OPINION</u>**

I.     INTRODUCTION

In this diversity action, Pennsylvania resident Heather Luster ("Plaintiff") brings defamation and other tort claims against New Jersey resident, and competing dog breeder, Robin Reed ("Defendant"). Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction under Rule 12(b)(2), and alternatively contends that certain claims and requests for relief should be dismissed for failure to state a claim under Rule 12(b)(6) and/or that certain allegations should be stricken under Rule 12(f). (Docket Nos. 7; 9). Plaintiff opposes the Defendant's motion and advocates that her claims should proceed to discovery. (*See* Docket No. 12).  Neither party requested that a hearing be held and the motion is now fully briefed and ripe for disposition. After careful consideration of the parties' arguments, and for the following reasons, Defendants' Motion to Dismiss [7] will be granted, in part, as the Court finds that it lacks personal jurisdiction over Defendant. However, rather than dismiss the case, the Court will exercise its discretion to transfer this litigation to the U.S. District Court for the District of New Jersey for further adjudication of the merits of Plaintiff's claims and the remaining issues raised in

Defendant's Motion.

II.   FACTUAL BACKGROUND

*A.    Parties*

Plaintiff operates a kennel business and raises purebred Collie dogs at her home in Butler County, Pennsylvania. (Docket No. 1-1 at ¶¶ 9-10). Plaintiff is a "breeder of merit" and registers her collies with the American Kennel Club ("AKC"). (*Id.* at ¶¶ 8; 10). She is also a member of the Collie Club of America ("CCA"), which is a sub-organization of the AKC. Plaintiff shows her dogs throughout the country in competitions run by these organizations. (*See id.* at ¶¶ 12; 20).

Defendant is similarly engaged in the business of dog breeding and exhibition at her New Jersey-based kennel. (*See id.* at ¶¶ 2; 11). In addition to showing dogs, Defendant serves as a competition judge for the AKC.  (*See id.* at ¶¶ 11-12). Defendant also takes part in dog shows throughout the country, including in Pennsylvania. (*Id.* at ¶ 13; Exhibit A).  To that end, Plaintiff alleges that Defendant participated in dog shows in Latrobe, York and Bloomsburg, Pennsylvania during 2020 and in Revere, Ludwigs Corner, Centre Hall, Bloomsburg, Macungie, New Castle, and Oaks, Pennsylvania during 2021. (*Id.* at Exhibit A).

Plaintiff's stepson, Ronald Luster, Jr. ("Luster, Jr.") previously worked at her kennel in Pennsylvania, raising and showing collies. (*Id.* at ¶¶ 6-7). Luster, Jr. subsequently moved to New Jersey and has become involved with Defendant personally and professionally. (*Id.* at ¶ 7). Defendant objects to Plaintiff's characterization of Luster, Jr. as her "paramour." (Docket Nos. 7; 9).

*B.    Plaintiff's Claims*

Plaintiff's Complaint raises claims for defamation of character, invasion of privacy (including false light and publicity given to private life), injurious falsehood, intentional infliction

of emotional distress, and interference with advantageous business or professional relationship against Defendant. (Docket No. 1-1). The facts supporting these claims essentially arise out of three incidents: a report made to the Pennsylvania Department of Agriculture's Dog Law Enforcement Office ("Pennsylvania Dog Enforcement Office") about Plaintiff's kennel; a 9-1-1 call made to Wyoming authorities during a dog show under the name "Heather Luster," which Plaintiff denies making; and complaints made to the AKC that Plaintiff had violated their code of sportsmanship. (*See* Docket No. 1-1). Plaintiff's claims also rest on several social media posts ostensibly made by Defendant. (*Id.*).

  C. *False Complaint to Pennsylvania Dog Enforcement Officials*

   On February 10, 2021, an individual contacted the Pennsylvania Dog Enforcement Office to report that Plaintiff was "hiding" dogs and had forged AKC registration forms. (Docket No. 1-1 at Exhibits B, C). Dog Wardens Thomas Warry ("Warry") and Jennifer George completed an inspection of Plaintiff's kennel on February 11, 2021 following the complaint, but found no violations or unregistered dogs, as only dogs over the age of three months were required to be registered. (*Id.* at ¶¶ 15; 16; 18; Exhibit B, C). Plaintiff alleges that Warry informed her that Defendant was the individual who called the agency to report her kennel, and that Defendant also made an allegation to them that Plaintiff had bribed the inspectors. (*Id.* at ¶ 16; Exhibit B). Plaintiff's kennel passed the inspection. (*Id.* at Exhibit B).

  D. *Fraudulent 9-1-1 Call*

   In April of 2021, Plaintiff competed in a dog show in Laramie County, Wyoming. (*Id.* at ¶ 20). During the show, a 9-1-1 call was placed by an individual claiming to be "Heather Luster," asking the authorities to investigate property theft at the dog show. (*Id.* at ¶¶ 21, 22; Exhibit D). Uniformed officers from the Laramie County Sheriff's Department arrived and asked to speak to

the Plaintiff about her emergency call, but Plaintiff informed them that she made no such call. (*Id.* at ¶¶ 22-23). Plaintiff attached a copy of her cell phone records from the date in question as proof that she was not the individual who called 9-1-1 in her name. (*Id.* at Exhibit E). Plaintiff worked with authorities to obtain a copy of the recording of the call, which she sent for voice analysis by a privately hired expert, Edward Primeau. (*See id.* at ¶ 27; Exhibits D, F). Though the expert report does not name Defendant or definitively identify her as the caller from the 9-1-1 recording, Plaintiff alleges that Defendant was the individual who impersonated her during the call. (*Id.* at ¶ 26; Exhibit F).

E.   *Complaints to the AKC & CCA*

The ongoing disputes between Plaintiff and Defendant ultimately led to them submitting competing complaints to the AKC and the CCA, with Defendant alleging to the AKC that Plaintiff violated the code of sportsmanship, and Plaintiff asserting to the CCA that the Defendant engaged in conduct unbecoming of a judge. (*Id.* at ¶¶ 28, 32; Exhibits G-J). Regarding Defendant's actions, an August 10, 2021 email from "Robin" to Jessica Lopez ("Lopez"), a compliance specialist at the AKC based in North Carolina, raises a litany of complaints about how Plaintiff had repeatedly violated the organization's code of sportsmanship. (*Id.* at Exhibit G). Plaintiff was afforded an opportunity to provide a written response to those accusations, and her reply provides further background about the many disputes between Plaintiff and Defendant. (*Id.* at Exhibit H). An October 28, 2021 letter from Lopez announced the AKC's decision not to conduct any further inquiry into Defendant's complaints about Plaintiff. (*Id.* at Exhibit I).

With respect to her own complaints about Defendant, Plaintiff maintains that the CCA held a hearing, sustained her complaints, and issued a ruling suspending Defendant for six months while also recommending that she be expelled from the organization. (*Id.* at Exhibit J). The written ruling

4

issued by the Board Hearing Committee does not indicate where the hearing was held, but it is signed by District Directors based in Kansas, Texas, Florida, North Carolina and Illinois. (*Id*.).

      F.     *Social Media Posts*

      Plaintiff's Complaint also references numerous social media posts purportedly made by Defendant. (*Id.* at ¶¶ 34-35). Plaintiff attaches screen shots of several undated posts from a Facebook page belonging "Robin Reed" as exhibits to her Complaint. (*See id.* at Exhibit K). Some of the posts reference the stolen property incident and 9-1-1 call at the dog show in Wyoming, and imply that Defendant had contacted the authorities about the same; other posts show "memes," pictures of voodoo dolls, or the like. (*Id.*). While a Facebook account for "Heather Luster" also interacts with some of the posts, none of the posts by "Robin Reed" directly reference the Plaintiff in any way. (*See id.*).

    III.    PROCEDURAL HISTORY

      Plaintiff filed the present suit in the Butler County Court of Common Pleas on or about April 13, 2022. (*See* Docket No. 1-1). Based on the diversity of the parties, Defendant removed the action to the United States District Court for the Western District of Pennsylvania on May 5, 2022. (Docket No. 1). Following removal, Defendant filed the instant Motion to Dismiss and/or to Strike under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(f) and a brief in support. (Docket Nos. 7; 9). Plaintiff submitted her response and Defendant replied. (Docket Nos. 12; 14). As noted, the parties did not request that the Court convene a hearing on the matter.[1] Accordingly, the Court considers the motion to be fully briefed and ripe for disposition.

---

[1]    The Court notes that it recognizes its authority to order the parties to conduct discovery on contested jurisdictional issues and to hold an evidentiary hearing to permit the parties to present evidence on these issues. Indeed, this Court has ordered both discovery and evidentiary hearings in prior cases where personal jurisdiction has been contested by the parties, *see, e.g.*, *Hufnagel v. Ciamacco*, 281 F.R.D. 238 (W.D. Pa. Mar. 20, 2012); *Rychel v. Yates*, 2011 WL 1363751 (W.D. Pa. Apr. 11, 2011). Here, neither party has requested that the Court conduct an evidentiary hearing and the Court declines to do so *sua sponte*.

IV.   LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). If an evidentiary hearing is not held, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

In Pennsylvania, courts are authorized to exercise personal jurisdiction over a defendant to the fullest extent permitted under the Federal Constitution. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998); *see also* 42 PA. CONS. STAT. § 5322(b). The Due Process Clause protects defendants from binding judgments of foreign states with which the defendants had no significant "contacts, ties, or relations." *Burger King v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant be provided a "fair warning" and a "degree of predictability" regarding how its conduct may subject it to legal process and liability in a particular forum. *Burger King*, 471 U.S. at 472.

Personal jurisdiction may be established in accordance with these Constitutional principles through a showing of general or specific jurisdiction. *See Hepp v. Facebook*, 14 F.4th 204, 207-08 (3d Cir. 2021). Only specific jurisdiction is relevant to this matter. "Specific jurisdiction" is "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To establish specific personal jurisdiction, a plaintiff must show that a defendant had fair warning

6

that he or she was subject to legal process in a particular state because the defendant had "minimum contacts" with the state. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Burger King*, 47 U.S. at 472). However, minimum contacts, alone, are not sufficient for personal jurisdiction absent "a strong 'relationship among the defendant, the forum and the litigation.'" *Hepp*, 14 F.4th at 208 (quoting *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021)). *Hepp* reaffirms the established principle that only minimum contacts which "give rise to" or "relate to" the plaintiff's claims vest a Court with specific jurisdiction. *Id.*

A court determines specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 318 n.3 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001)). Importantly, a defendant's contacts with the forum relating to time-barred claims are not considered for the purpose of establishing specific personal jurisdiction. *See Ciolli v. Iravani*, 651 F. Supp. 2d 356, 369 (E.D. Pa. 2009).

V.   DISCUSSION

It is undisputed that Defendant is a citizen of New Jersey and does not have continuous and systematic contacts with Pennsylvania which would be sufficient for this Court to exercise general personal jurisdiction. (Docket No. 12 at 4). Hence, the disagreement between the parties concerns whether Defendant's alleged claim-specific actions are sufficient for the Court to find that it has specific personal jurisdiction over this case. (*See* Docket Nos. 7; 9; 12; 14). Defendant contends that Plaintiff has failed to meet her burden to establish a *prima facie* case of specific personal jurisdiction as to her claims. (Docket Nos. 7; 9; 14). In her response, Plaintiff relies primarily on her defamation claim in arguing that Defendant expressly aimed her conduct toward Pennsylvania by reaching out to Pennsylvania authorities and making false statements about her kennel in February of 2021. (Docket No. 12). Plaintiff also suggests that Defendant's participation

in dog shows across Pennsylvania in 2020 and 2021 demonstrates sufficient ties to Pennsylvania to hail her into litigation in this forum.  (*See* Docket No. 12).  For the following reasons, the Court agrees with the Defendant that the Plaintiff has failed to meet her burden of proving a prima facie case of personal jurisdiction. *D'Jamoos*, 566 F.3d at 102.  The Court's analysis follows.

   *A.*  *Defamation Claim*

  At the outset, the Court finds that Plaintiff's allegations supporting her defamation claim are insufficient to demonstrate that this Court has personal jurisdiction over Defendant because the facts asserted clearly show that the claim is time-barred. Although the claim involves residents of Pennsylvania and New Jersey, a choice of law analysis is unnecessary because the laws are the same in both jurisdictions.  *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). In Pennsylvania, causes of action for defamation and invasion of privacy must be commenced within one year under the applicable statute of limitations. 42 Pa.C.S. § 5523(1); *see, e.g. Ghrist v. CBS Broadcasting, Inc.*, 40 F.Supp.3d 623, (W.D. Pa. 2014) (Hornak, C.J.) ("[…]false light/invasion of privacy and defamation allegations […] remain time-barred under Pennsylvania's one-year statute of limitations"). Likewise, New Jersey law also imposes a one-year statute of limitations on defamation claims. N.J.S.A. § 2A:14-3; *Smith v. Datla*, 164 A.3d 1110, 1116-17 (N.J. Super. 2017) ("Claims for defamation are subject to the one-year statute of limitations imposed by N.J.S.A. 2A:14–3."). Under the Third Circuit rule, a claim is subject to dismissal on statute of limitations grounds if the bar is apparent from the face of the complaint.  *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002); *see also Greiser v. Drinkard*, App. No. 21-1879, 2022 WL 412946, at *3 (3d Cir. 2022) (affirming dismissal of defamation claim as the facts alleged in the complaint showed that the statute of limitations clearly barred the claim).

  Here, Plaintiff alleges that Defendant defamed her when she called a Pennsylvania

governmental agency on February 10, 2021 and falsely reported her for failing to properly register her dogs and stated that she had bribed inspectors. (Docket No. 1-1; Exhibit B). Plaintiff further avers that she was informed of Defendant's allegations during the Pennsylvania Dog Enforcement Office's inspection of her kennel on February 11, 2021. (Docket No. 1-1 at ¶¶ 38-39). In light of these allegations, it is clear from the face of the Complaint that Plaintiff's defamation claim accrued on February 11, 2021 such that it was required to be filed within one year or by February 10, 2022. However, Plaintiff initiated this lawsuit in the Court of Common Pleas of Butler County on April 13, 2022, more than one year after her claim accrued. (*See* Docket No. 1-1). All told, Plaintiff's defamation claim is subject to dismissal because it is barred by the statute of limitations and the Court cannot consider the factual allegations underlying this claim for the purpose of determining whether it has specific personal jurisdiction over Defendant. *Ciolli*, 651 F. Supp. 2d at 369. Hence, Plaintiff has failed to meet her burden to show that the Court has personal jurisdiction over Defendant as to the defamation claim. *See D'Jamoos*, 566 F.3d at 102.

   B.   *Defendant's Participation in Pennsylvania Dog Shows*

Plaintiff's only other argument is that the Court has personal jurisdiction over this litigation because Defendant engages in commerce in the Commonwealth of Pennsylvania by virtue of her participation in dog shows throughout the state in 2020 and 2021. (Docket No. 12). Defendant maintains that such contacts are not enough to require her to defend the case in the Western District of Pennsylvania. (Docket Nos. 7; 9; 14).  Having considered the parties' arguments, the Court agrees with Defendant.

It is this Court's opinion that Plaintiff's position concerns the first prong of the specific jurisdiction analysis, *i.e.* whether the defendant had the requisite minimum contacts with the forum, but does not account for the second prong. To that end, the Third Circuit's decision in *Hepp*

makes clear that a defendant's minimum contacts with a forum state, alone, do not vest a Court with specific jurisdiction absent the "requisite strong relationship among the defendant, the forum, and the litigation." *Hepp*, 14 F.4th at 208. As the Court of Appeals held,

> Hepp's allegations focus on how Imgur and Reddit purposefully availed themselves of the Pennsylvania market. But those contacts do not relate to this litigation. Hepp alleges Imgur and Reddit targeted their advertising business to Pennsylvania. And she alleges Imgur has an online merchandise store that sells products to Pennsylvanians. Finally, she points to Reddit's premium membership business and an online community organized around Philadelphia. But none of these contacts forms a strong connection to the misappropriation of Hepp's likeness. Hepp did not allege the merchandise featured her photo. Nor did she allege Imgur and Reddit used her likeness to sell advertising. Finally, she did not claim the photo was taken, uploaded, or hosted in Pennsylvania.

*Hepp*, 14 F.4th at 208.

A careful review of the allegations in Plaintiff's Complaint establishes that she has not set forth plausible allegations which tie Defendant's actions at the Pennsylvania dog shows she participated in during 2020 and 2021 to any of her claims. (*See* Docket Nos. 1-1; 12). Indeed, these dog shows are simply listed in an attachment to the Complaint and are not otherwise mentioned therein. (*See* Docket No. 1-1, Exhibit A). Without more, the Court cannot find that Defendant's mere participation in dog shows in Pennsylvania "gave rise to" or "relates to" the present litigation. *See, e.g.*, *Hepp*, 14 F.4th at 207-08; *cf. O'Connor*, 496 F.3d at 317. As such, Plaintiff has not met her burden to show that these unrelated events are sufficient to demonstrate personal jurisdiction over Defendant. *See id.*

In a similar vein, it is well settled that the "mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient" to demonstrate specific personal jurisdiction. *IMO Indus.*, 155 F.3d at 263. The remainder of Plaintiff's claims and supporting allegations concern matters that allegedly took place

outside this jurisdiction, including the 9-1-1 incident in Laramie County, Wyoming, the disputes before the North Carolina-based AKC, and the matter before the CCA, which has directors spread across several states outside of the Commonwealth. The social media posts purportedly made by Defendant also lack any nexus to Pennsylvania. As far as the Court can tell from the record, the only thing tying Plaintiff's remaining claims to the Commonwealth is her own residence here. *See IMO Indus.*, 155 F.3d at 263.  Ultimately, Plaintiff has failed to set forth any facts that Defendant intentionally aimed tortious conduct towards the Commonwealth of Pennsylvania, as is required for the Court to exercise specific jurisdiction over her remaining claims. *Marten*, 499 F.3d at 297.

For all of these reasons, Defendant's motion to dismiss under Rule 12(b)(2) will be granted, in part.

C.      *Transfer or Dismissal*

Because this Court lacks personal jurisdiction over the Defendant, the question remains whether the Court should dismiss this action pursuant to 28 U.S.C. § 1406(a) or exercise its discretion to transfer it to an appropriate District Court pursuant to 28 U.S.C. § 1631.  *See Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. Pa. 1985) (stating that a district court lacking personal jurisdiction can transfer a case to a district in which the case could have originally been brought); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("A district court that lacks personal jurisdiction must at least consider a transfer."). Section 1406(a) provides as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

On the other hand, Section 1631 provides, in pertinent part:

> Whenever a civil action is filed in a court ... and that court finds that
> there is a want of jurisdiction, the court shall, if it is in the interest
> of justice, transfer such action or appeal to any other such court in
> which the action or appeal could have been brought at the time it
> was filed ... and the action ... shall proceed as if it has been filed in
> ... the court to which it is transferred on the date upon which it was
> actually filed in ... the court from which it is transferred.

28 U.S.C. § 1631. The Court has broad discretion to transfer the matter to an appropriate forum.

*See Danziger*, 948 F.3d at 132 (citing *Jumara v. State Farm Ins. Co.*, 55 F3d 873, 883 (3d Cir. 1995).

In this Court's opinion, the interests of justice are better served if this case is transferred to the United States District Court for the District of New Jersey, rather than dismissed.  Defendant resides in New Jersey and is subject to general personal jurisdiction in that state.  Given that certain of Plaintiff's claims are subject to a 1-year statute of limitations, the Court believes that a prompt transfer to an appropriate forum is in the interests of justice. *See Danziger*, 948 F.3d at 132.

VI.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, in part, as the Court lacks specific personal jurisdiction over Defendant. The Court will exercise its discretion to transfer this case to the District of New Jersey for further proceedings, including the parties' remaining arguments as to the motions under Rule 12(b)(6) and 12(f). An appropriate Order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  August 22, 2022

cc/ecf:  All counsel of record.

12